Eugene Killian, Jr. (Bar No. 002081990)
Ryan Milun (Bar No. 043412006)
THE KILLIAN FIRM, P.C.
555 Route 1 South, Suite 430
Iselin, NJ   08830
732-912-2100
rmilun@tkfpc.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DONALD P. MILIONE, D.C., | CIVIL ACTION NO.: |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| UNITED HEALTHCARE; OPTUMHEALTH CARE SOLUTIONS, LLC; OXFORD HEALTH PLANS, INC.; TRUSTMARK MUTUAL HOLDING COMPANY; CORESOURCE (a wholly owned subsidiary of Trustmark); and MERITAIN HEALTH, | |
| Defendant. | |

Plaintiff, Donald P. Milione, D.C. ("Milione"), with a business address located at 330 E. 79 Street, New York, New York 10075 for his complaint against defendants United Healthcare ("UHC"); Optum Healthcare Solutions, LLC ("Optum"); Oxford Health Plans, Inc.; Trustmark Mutual Holding Company; Coresource (a wholly owned subsidiary of Trustmark); and Meritain Health, states:

**THE PARTIES**

1.       United Healthcare ("UHC") is a corporation that sells insurance products, including health insurance plans and policies, within the State of New Jersey and specifically within this district.

2.      OptumHealth Care Solutions, LLC ("Optum") is a company that performs reviews on behalf of Oxford Health Plans and reviews appeals related to benefit determinations under the Oxford Health Plans, within the State of New Jersey and specifically within this District.

3.      Oxford Health Plans ("Oxford") is a part of United Healthcare and sells insurance products, including health insurance policies and plans within the State of New Jersey and specifically in this district.

4.      Meritain Health, Inc. ("Meritain"), a subsidiary of Aetna, is a company headquartered in Amherst, New York.  Meritain provides healthcare services throughout the United States, including third-party administrative services to self-funded healthcare plans in New York, New Jersey and elsewhere.  Meritain decided claims for medical benefits under certain plans for Milione patients.  As such, Meritain is an ERISA fiduciary.

5.      Trustmark Mutual Holding Company ("Trustmark") is located in Lake Forest, Illinois and is the parent company of Coresource and serves employers and affinity groups through a variety of organizations.  Trustmark and its subsidiaries, including Coresource, offer national access to benefits administration services, managed care, as well as life, medical, disability, critical illness and accident insurance to customers throughout the United States, including within the State of New Jersey and this district.

6.      Coresource is a wholly owned subsidiary of Trustmark and provides health plans to employers that include "customized solutions and tailored plans to control the rising cost of healthcare." Coresource offers its services to customers throughout the United States, including within the State of New Jersey and this district.

7.     Donald P. Milione ("Milione") provides chiropractic services to his patients in the New York, New Jersey and Connecticut area.

8.     During the relevant time period, Milione provided chiropractic services to Matthias Pelster ("Pelster") who was covered by an insurance policy or plan sold by UHC. Pelster's member ID number is 085216033 and he has assigned his claims to coverage under the UHC policy to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Pelster at the time the services were performed.

9.     Milione also provided chiropractic services to Christina Wang ("Wang") who was covered by an insurance policy sold by UHC. Wang's member ID number is 957559770 and she has assigned her claims to coverage under the UHC plan to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Wang at the time the services were performed.

10.     Milione also provided chiropractic services to Harry Litman ("Litman") who was covered by an insurance policy sold by Optum/Oxford.  Litman's member ID number is 1324319604 and he has assigned his claims to coverage and benefits under the Optum/Oxford plan to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by Optum/Oxford under the plan covering Litman at the time the services were performed.  Optum Healthcare Solutions performed the review of the claims submitted by Milione on behalf of Litman and Optum Healthcare improperly upheld the denial of coverage.

11.     Milione also provided chiropractic services to Patricia Grande ("Grande") who was covered by an insurance policy sold by Oxford and administered by Optum. Grande's member ID number is 1145973001 and she has properly assigned her claims to coverage and

benefits under the Oxford policy so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by Oxford under the plan covering Grande at the time the services were performed. Optum Healthcare Solutions performed the review of the claims submitted by Milione on behalf of Grande and Optum Healthcare improperly upheld the denial of coverage.

12.     Milione also provided chiropractic services to Sachin Agrawal ("Agrawal") who was covered by an insurance policy sold by Oxford and administered by Optum. Agrawal's member ID number is 31419323900 and he has properly assigned his claims to coverage and benefits under the Oxford plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by Oxford under the plan covering Agrawal at the time the services were performed. Optum Healthcare Solutions performed the review of the claims submitted by Milione on behalf of Agrawal and Optum Healthcare improperly upheld the denial of coverage.

13.     Milione also provided chiropractic services to Hezi Mena ("Mena") who was covered by an insurance policy sold by Trustmark/Coresource.  Mena's member ID number is 25396177C and he has properly assigned his claims to coverage and benefits under the Trustmark/Coresource plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by Trustmark/Coresource under the plan covering Mena at the time the services were performed.

14.     Milione also provided chiropractic services to Maya Bar Dagan ("Dagan") who was covered by an insurance policy sold by Trustmark/Coresource.  Dagan's member ID number is 25396177C and he has properly assigned her claims to coverage and benefits under the Trustmark/Coresource plan so that Milione can prosecute this action for the recovery of benefits

improperly denied or underpaid by Trustmark/Coresource under the plan covering Dagan at the time the services were performed

15.     Milione also provided chiropractic services to Evangeline Guedouar ("Guedouar") who was covered by an insurance policy sold by Meritain Health.  Guedouar's member ID number is 7357942964 and she has assigned her claims to coverage and benefits under the Meritain Health policy to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by Meritain Health under the plan covering Guedouar at the time the services were performed.

16.     Finally, Milione also provided chiropractic services to Marina Poplavskaya ("Poplavskaya") who was covered by an insurance policy sold by Meritain Health. Poplavskaya's member ID number is 7357942964 and she has assigned her claims to coverage and benefits under the Meritain Health policy to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by Meritain Health under the plan covering Poplavskaya at the time the services were performed.

## JURISDICTION AND VENUE

17.     This Court has federal question jurisdiction over this action under 28 USC §1331 and under the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. §1132 as this action involves a claim by Milione for his patients' benefits under an employee benefit plan regulated and governed under ERISA.

18.     Venue exists in this District under 28 USC §1391 in that the defendants reside in this district as entities that are "subject to the Court's personal jurisdiction with respect to the civil action in question" and the Defendants regularly conduct business in this district including the sale of insurance policies to citizens of this District.

## **NATURE AND BACKGROUND OF THIS ACTION**

19.    This action governed by Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, arises out of the repeated failure of Defendants to provide benefits for medically necessary treatment of several patients of plaintiff Dr. Donald Milione, D.C. ("Milione"). Defendants set up one obstacle after another to Plaintiff's quest to have his services covered.

20.    As described below, Defendants repeatedly denied or underpaid Milione's patients claims for various services, including Nerve Conduction Studies and in denying or underpaying the claims, routinely ignored relevant information submitted by Milione during the claims process and refused to properly consider the appeals filed by Milione on behalf of his patients.

21.    Defendants not only made erroneous benefit determinations that should be reversed, they also grievously violated their duties as ERISA fiduciaries.  They have failed to act prudently and in the interests of Milione's patients, the plan beneficiaries, have failed to follow written plan documents, and have failed to decide the claims under a full and fair claims procedure as set forth in ERISA's claims regulations.  See 29 U.S.C. §§ 1104, 1133; 29 C.F.R. § 2560.503-1.

22.    Plaintiff seeks payment of all benefits due to his patients under the valid assignments he received prior to providing services and Plaintiff further seeks injunctive and other equitable relief requiring Defendants to comply with the requirements of ERISA in the future with regard to additional services provided to patients.

*Matthias Pelster:*

23.    Pelster was a patient of Milione and UHC denied benefits for certain services performed on the following dates: December 23, 2019; January 7, 8, 9, 13, 14, 16, 20, 23, 27, and 30, 2020; February 3, 6, 13, 20, and 27, 2020; and March 5, 2020.

24.    Pelster was, at all relevant times, a covered beneficiary under a benefit plan regulated by ERISA and pursuant to which, Pelster is entitled to health care benefits.

25.    The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

26.    UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

27.    The total for all of the required services that were improperly denied or underpaid by UHC for Pelster is: **$24,096.09.**

28.    After the benefits were improperly denied or underpaid, Milione (on behalf of Pelster) requested both a first and second level of appeal through UHC's appeal process yet both levels of appeal were denied.

29.    To date, the claim for benefits for Pelster remains denied and unpaid.

*Christina Wang:*

30.    Wang was a patient of Milione and UHC has failed to pay and/or has significantly underpaid benefits for certain procedures performed on November 25, 2019.

31.    The denied procedures were for Nerve Conduction Studies and other related procedures on the date listed above.

32.     Wang was at all times a beneficiary under a benefit plan regulated by ERISA and pursuant to which Want was entitled to health benefits.

33.     UHC denied or underpaid the benefits due to Wang for the Nerve Conduction Studies and related procedures on the above-mentioned date despite the fact that the procedures were not only medically necessary, UHC had already paid for the exact same procedures at other times during the plan year and during the prior plan years.

34.     UHC also ignored the medical information provided by Milione to support the benefits determination and to confirm that the procedures were indeed medically necessary as defined under the UHC plan.

35.     The total amount for all of the required services that were improperly denied or underpaid by UHC for Wang was approximately **$3,872.67**.

36.     After the benefits were denied or underpaid, Milione (on behalf of Wang) went through the necessary appeals process under the UHC plan yet all appeals were improperly denied – again by UHC relying on an improper application of the medical necessity criteria among other unsupported reasons.

*Harry Litman:*

37.     Litman was a patient of Milione and Optum/Oxford has significantly underpaid benefits for certain services performed on September 30, 2019; and October 2, 8, 10, 14, 21, and 23, 2019.

38.     Although the various procedures were approved by Optum/Oxford and were paid, Optum/Oxford inexplicably underpaid the Litman claims by **$1,716.12**.

39.     Litman was, at all relevant times, a covered beneficiary under a benefit plan regulated by ERISA and pursuant to which, Litman was entitled to the full amount of the paid-for health care benefits.

40.     Oxford/Optum has failed to provide a valid basis for the underpayment of Litman's claims and to date the Litman claim remains partially denied and underpaid.

*Patricia Grande:*

41.     Grande was a patient of Milione and Oxford has failed to pay and/or significantly underpaid benefits for certain procedures performed on April 23, 2015; June 2, 8, 11, 16, 18 and 29, 2015; July 1, 6, 9, 15, 21, 23, 27, 30, 2015; August 4, 6, 11, 2015; September 1, 3, 8, 14, 21, 30, 2015; October 7, 12, 15, 2015; November 30, 2015; and December 15, 2015.

42.     The denied procedures were for CPT Code 95910 for Nerve Conduction Studies and other related procedures on the various dates listed.

43.     Grande was at all relevant times a beneficiary under a benefit plan regulated by ERISA and pursuant to which Grande is and was entitled to health benefits.

44.     Optum/Oxford denied the payment of benefits to Grande for the Nerve Conduction Studies and related procedures on the above-mentioned dates despite the fact that the procedures were not only medically necessary, Optum/Oxford had already paid for the exact same benefits at other times during the plan year and during the prior plan years.

45.     Optum/Oxford also ignored the medical information provided by Milione to support the benefits determinations and to confirm that the procedures were indeed medically necessary as defined under the Oxford plan.

46.     The total for all of the required services that were improperly denied or underpaid by Optum/Oxford was approximately **$17,097.48**.

47.     After the benefits were denied or underpaid, Milione (on behalf of Grande) went through the necessary appeals process under the Oxford plan yet all appeals were improperly denied – again by Optum/Oxford relying on an improper application of the medical necessity criteria among other unsupported reasons.

*Sachin Agrawal*

48.     Agrawal was a patient of Milione and Oxford has failed to pay and/or significantly underpaid benefits for certain procedures performed on July 15, 17, 18, 22, 24, 29 and 31, 2019; August 7, 12, 14, 19, 21, 26, 28, 2019; and September 4, 11, 25, 2019.

49.     The denied or underpaid procedures were for CPT Code 95910 and related studies and procedures on the various dates listed above.

50.     Agrawal was at all relevant times a beneficiary under a plan regulated by ERISA and pursuant to which Agrawal is and was entitled to health benefits.

51.     Optum/Oxford denied the benefits or significantly underpaid the benefits to Agrawal for the Nerve Conduction Studies and related procedures on the above-mentioned dates despite the fact that the procedures were not only medically necessary, Optum/Oxford had already paid for the exact same benefits (or paid at much higher rates) at other times during the plan year and/or during prior plan years.

52.     In denying the benefits, Optum/Oxford also ignored the medication information provided by Milione to support the benefits determination and to confirm that the procedures were indeed medically necessary and should have been paid in full.

53.     The total for all of the required procedures that were improperly denied by Optum/Oxford was approximately **$9,847.41**.

54.     After the benefits were denied or underpaid, Milione (on behalf of Agrawal) went through the necessary appeals process under the Oxford plan yet all appeals were improperly denied – again by Optum/Oxford relying on improper application of the medical necessity criteria among other unsupported reasons for the denials and/or failing to make the full required payments.

*Hezi Mena*

55.     Mena was a patient of Milione and Trustmark/Coresource has failed to pay and/or has significantly underpaid benefits for certain procedures performed on April 8, 11, 16, 18, 24, 2019; and May 1, 2019.

56.     The denied procedures were for CPT Code 95910 for Nerve Conduction Studies and other related procedures on the various dates listed.

57.     Mena was at all relevant times a beneficiary under a plan regulated by ERISA and pursuant to which Mena is and was entitled to benefits.

58.     Trustmark/Coresource denied the payment of benefits to Mena and/or significantly underpaid for certain benefits for the Nerve Conduction Studies and related procedures on the above-mentioned dates despite the fact that the procedures were not only medically necessary, Trustmark/Optum had already paid for the exact same benefits at other times during the plan year and during the prior plan years.

59.     Trustmark/Coresource also ignored the medical information provided by Milione to support the benefits determinations and to confirm that the procedures were indeed medically necessary as defined under the Trustmark/Coresource plan.

60.     The total for all of the required services that were improperly denied and/or severely underpaid by Trustmark/Coresource was approximately **$10,450.20**.

61.     After the benefits were denied, Milione (on behalf of Mena) went through the necessary appeal procedures under the Trustmark/Coresource plan yet all appeals were improperly denied – again by Trustmark/Coresource relying on an improper application of the medical necessity criteria among other unsupported reasons.

*Maya Bar Dagan:*

62.     Dagan was a patient of Milione and Trustmark/Coresource has failed to pay or has significantly underpaid benefits for certain procedures performed on April 2, 3, 8, 10, 11, 15, 18, 25, 2019; May 1, 2019; and July 16, 2019.

63.     The denied procedures were for CPT Code 95910 for Nerve Conduction Stuadies and other related procedures on the various dates listed.

64.     Dagan was at all relevant times a beneficiary under a benefit plan regulated by ERISA and pursuant to which Dagan is and was entitled to health benefits.

65.     Trustmark/Coresource denied the payment of benefits to Dagan or significantly underpaid the benefits to Dagan for the Nerve Conduction Studies on the above-mentioned dates despite the fact that the procedures were not only medically necessary, Trustmark/Coresouce had already paid for the exact same benefits at other times during the plan year and during the prior plan years.

66.     Trustmark/Coresource also ignored the medical information provided by Milione to support the benefits determinations and to confirm that the procedures were indeed medically necessary as defined under the Trustmark/Coresource plan.

67.     The total amount for all of the required services that were improperly denied or underpaid by Trustmark/Coresource was approximately **$6,114.88**.

68.     After the benefits were denied, Milione (on behalf of Dagan) went through the necessary appeals process under the Oxford plan yet all appeals were improperly denied – again by Optum/Oxford relying on an improper application of the medical necessity criteria among other unsupported reasons.

*Marina Poplavskaya:*

69.     Poplavskaya was a patient of Milione and Meritain Health denied or significantly underpaid benefits for certain services performed on July 22, 23, 25, 29, 2019; August 7, 13, 15, 19, 21, 27, 2019; September 23, 26. 30, 2019; October 8, 14, 16, 2019; November 6, 14, 19, 20, 25, 26, 27, 2019; and December 3, 4, 10 ,12, 17, 19, 23, 2019.

70.     The denied procedures were for CPT Code 95910 for Nerve Conduction Studies and other related procedures.

71.     Poplavskaya was, at all relevant times, a covered beneficiary under a benefit plan regulated by ERISA and pursuant to which, Poplavskaya is entitled to health care benefits.

72.     Meritain denied or significantly underpaid benefits to Poplavskaya for the Nerve Conduction Studies and related procedures on the above dates despite the fact that the procedures were medically necessary and the fact that Meritain had paid benefits to Poplavskaya and to members under other plans for the exact same CPT Code: 95910 for NCV studies.

73.     Meritain also ignored the medical information provided by Milione that specifically noted that the nerve studies and related procedures fall directly under the policy's definition of medical necessity.

74.     The total for all of the required services that were improperly denied by Meritain for Poplavskaya was approximately **$29,332.51.**

75.     After the benefits were denied or underpaid, Milione (on behalf of Poplavskaya) requested both a first and second level of appeal through Meritain's appeal process yet both levels of appeal were denied – again relying on an improper application of the medical necessity criteria among other reasons.

76.     In denying coverage for the nerve studies and related procedures, the review gave short shrift to the fact that the exact same procedures were covered by Meritain on numerous occasions for other patients and Meritain specifically ignored the medical information provided by Milione to support the claims.

*Evangeline Guedouar:*

77.     Guedouar was a patient of Milione and Meritain denied or underpaid benefits for certain services performed on December 3, 12, 18, 23, 2019.

78.     The denied procedures were for various chiropractic services performed by Milione on the dates listed.

79.     Guedouar was at all relevant times a beneficiary under a benefits plan regulated by ERISA and pursuant to which Guedouar was entitled to benefits.

80.     Meritain denied the payment of benefits to Guedouar or significantly underpaid the claim for benefits despite the fact that the procedures were not only medically necessary, Meritain had already paid for the exact same benefits at other times during the plan year and during the prior plan years.

81.     Meritain also ignored the medical information provided by Milione to support the benefits determinations and to confirm that the procedures were indeed medically necessary as defined by the Meritain plan.

82.     The total amount for all of the required procedures that were improperly denied or significantly underpaid by Meritain was approximately **$2,149.98**.

83.     After the benefits were denied or underpaid, Milione (on behalf of Guedouar) went through the necessary appeal process under the Meritain plan yet all appeals were improperly denied – again by Meritain relying on an improperly application of the medical necessity criteria among other unsupported reasons.

84.     The decisions on the appeals by the various insurance carrier reviewers for the various Milione patients were done in such a way as to suggest that the reviewers were actually looking for ways to deny coverage as opposed to looking for ways to cover Pelster, Wang, Litman, Grande, Agrawal, Mena, Dagan, Guedouar, and Poplavskaya.  This is improper under ERISA.

85.     The various carriers were required to provide benefits and coverage to Milione's patients, including Pelster, Wang, Litman, Grande, Agrawal, Mena, Dagan, Guedouar, and Poplavskaya, for the various nerve studies and other procedures conducted on each patient and by this action, Milione is seeking to enforce the coverage for the paid-for benefits his patients are entitled to under the various plans sold by the various insurance carriers listed in this complaint.

**FIRST CLAIM FOR RELIEF**
**AGAINST UHC FOR DENIAL OF BENEFITS – Pelster and Wang**

86.     Milione repeats the allegations contained in each of the preceding paragraphs of this Complaint.

87.     Claims were submitted to UHC for various procedures conducted on Milione's patient, Pelster, for dates of service: December 23, 2019; January 7, 8, 9, 13, 14, 16, 20, 23, 27, and 30, 2020; February 3, 6, 13, 20, and 27, 2020; and March 5, 2020.

88.     Claims were also submitted to UHC for various procedures conduct on Milione's patient, Wang for dates of service: November 25, 2019.

89.     The claims for benefits by both Pelster and Wang were improperly denied or underpaid by UHC and there is a total amount due and outstanding for the two patient/claimants of **$27,968.76**, which was the total cost of treatment for the above claims.

90.     UHC wrongfully denied or underpaid the claims for, among other reasons, that the claims were not medically necessary.

91.     The positions taken by UHC in denying or underpayment of the claims were not only contrary to the plans, but they were also contrary to the positions that UHC had already taken on multiple occasions during the plan year and in prior plan years at which time UHC had paid the appropriate amounts for the procedures and requested benefits.

92.     Inexplicably, despite a full appeal process, UHC has steadfastly maintained its denial or underpayment of benefits.

93.     UHC's denial or underpayment of benefits was not in the best interest of the patients and was a threat to their well-being.

94.     Following the denial or underpayment of the claim for benefits to Pelster and Wang under the UHC plans, all required administrative remedies under ERISA were exhausted.

95.     As a proximate result of the denial or underpayment of medical benefits, Milione has been damaged in the amount of all medical bills incurred for the various procedures, in a total sum to be proven at the time of trial, but believed to be **$27,968.76**.

96.     As a further direct and proximate result of UHC's improper determination regarding the various procedures, Milione, in pursuing this action, has been required to incur

attorney's fees and costs.  Pursuant to 29 U.S.C. § 1132(g)(1), Milione is entitled to have those fees and costs paid for by UHC.

**WHEREFORE**, Milione demands relief under ERISA as follows:

a.  For compensatory damages, including all amounts owed to date for the required procedures for Pelster and Wang totaling **$27,968.76**;

b.  A declaration that UHC was and is required to pay for the various procedures at issue;

c.  For attorneys fees as permitted by law;

d.  Interest and costs of suit;

e.  Such other relief that the Court deems appropriate.

**SECOND CLAIM FOR RELIEF**
**AGAINST OXFORD/OPTUM FOR DENIAL OF BENEFITS – Litman, Grande, Agrawal**

97.     Milione repeats the allegations contained in each of the preceding paragraphs of this Complaint.

98.     Claims were submitted to Optum/Oxford for various procedures conducted on Milione's patient, Litman for dates of service: September 30, 2019; and October 2, 8, 10, 14, 21, and 23, 2019.

99.     Claims were submitted to Optum/Oxford for various procedures conducted on Milione's patient, Grande for dates of service: April 23, 2015; June 2, 8, 11, 16, 18 and 29, 2015; July 1, 6, 9, 15, 21, 23, 27, 30, 2015; August 4, 6, 11, 2015; September 1, 3, 8, 14, 21, 30, 2015; October 7, 12, 15, 2015; November 30, 2015; and December 15, 2015.

100.    Claims were submitted to Optum/Oxford for various procedures conducted on Milione's patient, Agrawal for dates of service: July 15, 17, 18, 22, 24, 29 and 31, 2019; August 7, 12, 14, 19, 21, 26, 28, 2019; and September 4, 11, 25, 2019.

101.    The claims for benefits submitted by Litman, Grande, and Agrawal were improperly denied or underpaid by Optum/Oxford and there is a total amount due and outstanding for the three patient/claimants of **$29,547.37**, which was the total cost of treatment for the various claim dates.

102.    Optum/Oxford wrongfully denied the claims or underpaid the claims for, among other reasons, that the claims were not medically necessary.

103.    The positions taken by Optum/Oxford in denying or underpayment of the claims were not only contrary to the various plan documents, but they were also contrary to positions that Optum/Oxford had already taken on multiple occasions during the plan year and in the prior plan years at which time Optum/Oxford had paid the appropriate amounts for the procedures and requested benefits.

104.    Inexplicably, despite a full and complete appeal process, Optum/Oxford has steadfastly maintained its denial or underpayment of benefits.

105.    Optum/Oxford's denial or underpayment of benefits was not in the best interest of the patients and was a threat to their wellbeing.

106.    Following the denial or underpayment of the claim for benefits to Litman, Grande, and Agrawal under the Optum/Oxford plans, all required administrative remedies under ERISA were exhausted.

107.    As a proximate result of the denial or underpayment of medical benefits, Milione has been damaged in the amount of all medical bills incurred for the various procedures, in a sum to be proven at the time of trial, but believe to be **$29,547.37.**

108.    As a further direct and proximate result of Optum/Oxford's improper determination regarding the various procedures, Milione, in pursuing this action, has been

required to incur attorney's fees and costs.  Pursuant to 29 U.S.C. § 1132(g)(1), Milione is entitled to have those fees and costs paid for by Optum/Oxford.

**WHEREFORE**, Milione demands relief under ERISA as follows:

a. For compensatory damages, including all amounts owed to date for the required and covered nerve studies and related procedures for Litman, Grande, and Agrawal totaling **$29,547.37**;

b. A declaration that Optum/Oxford was and is required to pay for the required nerve studies and related procedures;

c. For attorneys fees as permitted by law;

d. Interest and costs of suit;

e. Such other relief that the Court deems appropriate.

## THIRD CLAIM FOR RELIEF
## AGAINST TRUSTMARK/CORESOURCE FOR DENIAL OF BENEFITS – Mena, Dagan

109.    Milione repeats the allegations contained in each of the preceding paragraphs of this Complaint.

110.    Claims for benefits were submitted to Trustmark/Coresource for various procedures conducted on Milione's patient Mena for dates of service: April 8, 11, 16, 18, 24, 2019; and May 1, 2019.

111.    Claims for benefits were submitted to Trustmark/Coresource for various procedures conducted on Milione's patient Dagan for dates of service: April 2, 3, 8, 10, 11, 15, 18, 25, 2019; May 1, 2019; and July 16, 2019.

112.    The claims for benefits for both Mena and Dagan were improperly denied or underpaid by Trustmark/Coresource and there is a total amount due and outstanding for the two patient/claimants of **$16,565.08**, which is the total cost for the treatment of the various claims.

113.     Trustmark/Coresource wrongfully denied or underpaid the claims for, among other reasons, that the claims were not medically necessary.

114.     The positions taken by Trustmark/Coresource in denying or underpayment of the claims were not only contrary to the plans, but they were also contrary to the positions that Trustmark/Coresource had already taken on multiple occasions during the plan year and in prior plan years at which time Trustmark/Coresource had paid the appropriate amounts for the procedures and requested benefits.

115.     Inexplicably, despite a full appeal process, Trustmark/Coresource has steadfastly maintained its denial or underpayment of benefits.

116.     Trustmark/Coresource's denial or underpayment of benefits was not in the best interest of the patients and was a threat to their well-being.

117.     Following the denial or underpayment of the claim for benefits to Mena and Dagan under the Trustmark/Coresource plans, all required administrative remedies under ERISA were exhausted.

118.     As a proximate result of the denial of medical benefits, Milione has been damaged in the amount of all medical bills incurred for the various procedures, in a total sum to be proven at trial, but believed to be **$16,565.08.**

119.     As a further direct and proximate result of Trustmark/Coresource's improper determination regarding the various procedures, Milione, in pursuing this action, has been required to incur attorney's fees and costs.  Pursuant to 29 U.S.C. § 1132(g)(1), Milione is entitled to have those fees and costs paid for by Trustmark/Coresource.

**WHEREFORE**, Milione demands relief under ERISA as follows:

a.  For compensatory damages, including all amounts owed to date for the required and covered nerve studies and related procedures for Mena and Dagan totaling **$16,565.08**;

b. A declaration that Trustmark/Coresource was and is required to pay for the nerve studies and related procedures;

c. For attorneys fees as permitted by law;

d. Interest and costs of suit;

e. Such other relief that the Court deems appropriate.

**FOURTH CLAIM FOR RELIEF**
**AGAINST MERITAIN FOR DENIAL OF BENEFITS – Guedouar, Poplavskaya**

120.    Milione repeats the allegations contained in each of the preceding paragraphs of this Complaint.

121.    Claims for benefits were submitted to Meritain for various procedures conducted on Milione's patient Guedouar for dates of service: December 3, 12, 18, 23, 2019.

122.    Claims for benefits were submitted to Meritain for various procedures conducted on Milione's patient Poplavskaya for dates of service: July 22, 23, 25, 29, 2019; August 7, 13, 15, 19, 21, 27, 2019; September 23, 26. 30, 2019; October 8, 14, 16, 2019; November 6, 14, 19, 20, 25, 26, 27, 2019;  and December 3, 4, 10 ,12, 17, 19, 23, 2019.

123.    The claims for benefits by both Guedouar and Poplavskaya were improperly denied or underpaid by Mertain and there is a total amount due and outstanding for the two patient/claimants of **$31,482.49**, which was the total cost of treatment for the above claims.

124.    Meritain wrongfully denied or underpaid the claims for, among other reasons, that the claims were not medically necessary.

125.    The positions taken by Meritain in denying or underpaying the claims were not only contrary to the plans, but they were also contrary to the positions that Meritain had already

taken on multiple occasions during the plan year and in prior plan years at which time Meritain had paid the appropriate amounts for the procedures and requested benefits.

126.    Inexplicably, despite a full appeal process, Meritain has steadfastly maintained its denial or underpayment of benefits.

127.    Meritain's denial or underpayment of benefits was not in the best interest of the patients and was a threat to their well-being.

128.    Following the denial or underpayment of the claims for benefits to Guedouar and Poplavskaya under the Meritain plans, all required administrative remedies under ERISA were exhausted.

129.    As a proximate result of the denial or underpayment of medical benefits, Milione has been damaged in the amount of all medical bills incurred for the various procedures, in a total sum to be proven at the time of trial, but believed to be **$31,482.49.**

130.    As a further direct and proximate result of Meritain's improper determination regarding the various procedures, Milione, in pursuing this action, has been required to incur attorney's fees and costs.  Pursuant to 29 U.S.C. § 1132(g)(1), Milione is entitled to have those fees and costs paid for by Meritain.

**WHEREFORE**, Milione demands relief under ERISA as follows:

a.   For compensatory damages, including all amounts owed to date for the required and covered nerve studies and related procedures for Guedouar and Poplavskaya totaling **$31,482.49**;

b.   A declaration that Meritain was and is required to pay for the various procedures;

c.   For attorneys fees as permitted by law;

d.   Interest and costs of suit;

e.   Such other relief that the Court deems appropriate.

Dated:  January 22, 20210                   **THE KILLIAN FIRM, P.C.**
                                       Attorneys for Plaintiff

                          By:       /s/ Ryan Milun
                                  RYAN MILUN
                                  THE KILLIAN FIRM, P.C.
                                  555 Route 1 South, Suite 420
                                  Iselin, NJ 08830
                                  732-912-2100
                                  rmilun@tkfpc.com

## **RULE 11 CERTIFICATION**

RYAN MILUN declares as follows:

I am an attorney in the law firm of The Killian Firm, P.C., the attorneys for plaintiff in this action.  Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 22, 2021

                         /s/ Ryan Milun
                         RYAN MILUN